[No. B258432. Second Dist., Div. Three. Dec. 15, 2015.]

HENRY CASTILLO et al., Plaintiffs and Appellants, v.
DHL EXPRESS (USA) et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 3. and 4. of the Discussion.

**COUNSEL**

Pine & Pine, Norman Pine, Scott Tillett; Makarem & Associates, Ronald W. Makarem and Jean-Paul Le Clercq for Plaintiffs and Appellants.

Fisher & Phillips, Christopher J. Boman and Shaun J. Voigt for Defendant and Respondent DHL Express (USA).

CE Smith Law Firm and Clifton E. Smith for Defendant and Respondent KWK Trucking, Inc.

**OPINION**

**LAVIN, J.—**

## INTRODUCTION

Henry Castillo, individually and on behalf of others similarly situated, appeals the dismissal of his wage-and-hour class action and individual

complaint against KWK Trucking, Inc. (KWK), and DHL Express (USA) (DHL) (collectively, defendants) for failure to prosecute within the five-year period provided by Code of Civil Procedure section 583.310.[1] Castillo contends the parties' participation in private mediation during the final months of the five-year period triggered section 1775.7, subdivision (b), which contains an automatic tolling provision. Alternatively, Castillo argues the trial court should have exercised its discretion to exclude from its calculation of the five-year period the time during which the parties pursued private mediation or the time during which DHL attempted to decertify the class. We conclude that section 1775.7 only applies to mediation conducted in a court-annexed alternative dispute resolution program. We also conclude that Castillo did not show it was impossible, impracticable or futile to bring his case to trial within five years. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Complaint and Class Certification*

Castillo filed his class action complaint on March 6, 2009. Castillo alleged he was a truck driver employed jointly by KWK and DHL and asserted claims for failure to pay regular and overtime wages, failure to provide meal and rest periods, failure to furnish accurate wage statements, failure to pay wages upon termination or discharge, and unfair competition in violation of Business and Professions Code section 17200. Castillo filed class certification motions as to both defendants approximately one year later. On April 12, 2010, the court granted Castillo's request to file a first amended complaint and also set a hearing date for the class certification motions. The court heard the motions and took them under submission on August 20, 2010.

On September 29, 2010, the court issued a minute order regarding the motions for class certification, stating that Castillo had not yet made an adequate showing regarding the class representatives. The court ordered both sides to produce additional evidence relating to class certification and set the matter for a further hearing to take place on November 9, 2010. The record materials provided by the parties do not disclose the fate of the first class certification motions. However, Castillo subsequently filed a second amended complaint and the court ordered Castillo to submit new class certification

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

motions by March 19, 2011, more than two years after the filing of the original complaint. On June 20, 2011, the court heard the class certification motions and granted them in part, certifying one class of drivers with four subclasses relating to wage statements, overtime, split shift and termination payment claims. The parties continued to litigate class certification issues through the end of 2011, at which time the court modified the certification order by removing the split shift subclass.

### 2. *Six Months Prior to Dismissal*

At a regularly scheduled status conference on September 30, 2013, the parties advised the court that they intended to pursue private mediation. The court set a post-mediation status conference and trial setting conference for January 6, 2014. The court also issued a case management order referring the case to mediation with a private neutral, per the parties' agreement. The case management order advised the parties they were within six months of trial.

DHL filed a motion to decertify the class in early November 2013, based mainly on its contention that, as a matter of law, it was not an "employer" of plaintiffs under California law. The court denied the motion on December 17, 2013. The next day, Castillo filed a stipulation signed by all parties agreeing to continue the post-mediation and trial setting conference until late February 2014. The court rescheduled the conference for February 28, 2014. Evidently, the mediation was unsuccessful. At the conference on February 28, 2014, the court set a trial date of June 17, 2014.

On April 4, 2014, or five years and one month after Castillo filed his original complaint, both defendants moved to dismiss the complaint due to Castillo's failure to bring the case to trial within five years. On May 6, 2014, after receiving written opposition from Castillo and hearing lengthy argument by counsel, the court granted the motions and dismissed the action for failure to prosecute within five years. Castillo timely appealed.

## CONTENTIONS

Castillo contends the five-year period to bring his action to trial under section 583.310 was tolled by operation of law (§ 1775.7, subd. (b)) for 151 days, beginning on September 30, 2013 (the day the parties advised the court they agreed to pursue private mediation), and ending on February 28, 2014 (the day the parties advised the court they had not settled their dispute). Alternatively, Castillo contends the trial court abused its discretion by refusing to exclude from its calculation of the five-year period either the 116 days during which DHL attempted to decertify the class or the 151 days during which the parties pursued private mediation. (§ 583.340.)

## DISCUSSION

1. *A Plaintiff Must Generally Bring a Civil Action to Trial Within Five Years*

██ "An action shall be brought to trial within five years after the action is commenced against the defendant." (§ 583.310.) Subject to certain statutory exceptions, dismissal is mandatory if the action is not brought to trial within the five-year period. (§ 583.360.) As it is undisputed that Castillo did not bring his action to trial within the five years after he filed his original complaint, we consider whether any circumstance existed in this case which would extend the five-year time period.

We independently review legal questions regarding the construction and application of a statute. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529 [120 Cal.Rptr.3d 531, 246 P.3d 612]; *Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694 [145 Cal.Rptr.3d 748] (*Dowling*).) Where, as here, the plaintiff contends it was impossible, impracticable or futile to bring the action to trial within the five-year period under section 583.340, subdivision (c), we review the trial court's ruling on that issue for an abuse of discretion. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 731 [122 Cal.Rptr.3d 331, 248 P.3d 1185] (*Bruns*); *Dowling, supra,* 208 Cal.App.4th at p. 694.)

2. *The Parties' Participation in Private Mediation Did Not Automatically Toll the Five-year Period*

 A. *Statutory Framework*

██ "In 1993, the Legislature enacted the civil action mediation program (§ 1775 et seq.), which allows courts to order cases into mediation as an alternative to judicial arbitration. (§§ 1775.2, 1775.3, subd. (a), 1775.4.)" (*Jeld-Wen, Inc. v. Superior Court* (2007) 146 Cal.App.4th 536, 540 [53 Cal.Rptr.3d 115] (*Jeld-Wen*).) If a court adopts a civil action mediation program, it may order to mediation any case in which judicial arbitration is required under section 1141.11, whether or not the action includes a prayer for equitable relief. (§§ 1775.3, 1141.18, subd. (b); Cal. Rules of Court, rule 3.891(a)(1).[2])

More particularly, rule 3.891(a)(1) provides that the superior court may submit to mediation any case with an amount in controversy under $50,000, after making a determination of the amount in controversy using the procedure set forth in section 1141.16, and after considering whether the parties are

---

[2] All further rule references are to the California Rules of Court.

amenable to mediation.[3] (Rule 3.891(a)(1); § 1775.5.) In addition, subdivision (a)(2) of that rule provides that any action, regardless of the amount of controversy, may be submitted to mediation if all parties so stipulate. (Rule 3.891(a)(2).) In that event, the parties must file a stipulation with the court not less than 90 days before trial. (*Ibid.*)

■ As part of the civil action mediation program, the Legislature provided that participation in a court-sponsored mediation program may extend the five-year time period during which a plaintiff must bring his case to trial under section 583.310. Specifically, section 1775.7, subdivision (b), provides: "If an action is or remains submitted to mediation pursuant to this title more than four years and six months after the plaintiff has filed the action, then the time beginning on the date four years and six months after the plaintiff has filed the action and ending on the date on which a statement of nonagreement is filed pursuant to Section 1775.9 shall not be included in computing the five-year period specified in Section 583.310."

In this case, the parties engaged in private mediation during December 2013 and February 2014, dates which fall within the final six months of the five-year time period to bring this action to trial under section 583.310. The issue before us is whether this action was "submitted to mediation" within the meaning of section 1775.7, subdivision (b), thereby triggering that section's automatic tolling provision.

### B. *This Case Was Not Submitted to Mediation Under Rule 3.891(a)*

Castillo contends that either the court ordered the parties to mediation under rule 3.891(a)(1) or the parties stipulated to mediation under rule 3.891(a)(2). Under either scenario, Castillo urges, this action was "submitted to mediation" within the meaning of section 1775.7. We disagree.

---

[3] The full text of rule 3.891 reads: "(a) Actions that may be submitted to mediation [¶] The following actions may be submitted to mediation under these provisions: [¶] (1) *By court order* [¶] Any action in which the amount in controversy, independent of the merits of liability, defenses, or comparative negligence, does not exceed $50,000 for each plaintiff. The court must determine the amount in controversy under Code of Civil Procedure section 1775.5. Determinations to send a case to mediation must be made by the court after consideration of the expressed views of the parties on the amenability of the case to mediation. The court must not require the parties or their counsel to personally appear in court for a conference held solely to determine whether to send their case to mediation. [¶] (2) *By stipulation* [¶] Any other action, regardless of the amount of controversy, in which all parties stipulate to such mediation. The stipulation must be filed not later than 90 days before trial unless the court permits a later time. [¶] (b) Case-by-case determination [¶] Amenability of a particular action for mediation must be determined on a case-by-case basis, rather than categorically."

### 1. *The Trial Court Did Not Order the Parties to Mediate Their Dispute*

We reject Castillo's contention that the trial court ordered the parties to pursue mediation within the meaning of rule 3.891(a)(1). Rather, the case management order dated September 30, 2013, reflects that the parties agreed to pursue private mediation at their own expense. Specifically, the court used a standard case management order form and checked the boxes indicating the case was "referred" (not "ordered") to mediation with a "private neutral" (not with "court services"), then added the handwritten notation: "parties agreement." The minute order from that date also reflects that "[c]ounsel have agreed to private mediation."

■ The court's own statements confirm this point. At the hearing on the defendants' motion to dismiss, the court stated it had not ordered the case to mediation, but rather referred the case to mediation pursuant to the parties' agreement as reflected in the case management order. The court also observed, during that hearing, that the Los Angeles Superior Court's mediation program was no longer operating on September 30, 2013, and it was therefore impossible for the court to order the parties to the court's mediation program at that time. As the court recognized, the court did not have the authority to order the parties to participate in private mediation at their own expense. (See *Jeld-Wen, supra,* 146 Cal.App.4th at p. 543 ["We conclude that a case management conference order requiring that parties in complex cases attend and pay for mediation is not authorized by [section 1775 et seq.] and is contrary to the voluntary nature of mediation."].)

■ In any event, section 1775.5 provides that a court may only order an action to mediation after it determines the amount in controversy. (§ 1775.5 [court shall not order a case into mediation where the amount in controversy exceeds $50,000]; see also §§ 1775.3, subd. (a) [mediation may only be ordered in cases in which arbitration is required under § 1141.11], 1141.11 [requiring judicial arbitration in all civil cases in which the amount in controversy is less than $50,000].) The court stated that it made no determination of the amount in controversy in this case because it understood it had no authority to order the case to mediation.

Nonetheless, Castillo insists the court ordered the parties to mediation. He asserts that the minute order, which states "Counsel have agreed to private mediation; *the Court so orders,*" constitutes such an order. At a minimum, Castillo contends, the minute order and the case management order conflict. He argues we must resolve the conflict between the two orders in a manner that preserves, rather than extinguishes, his right to obtain a trial on the merits because he relied to his detriment on the court's minute order. We

reject both arguments because we see no ambiguity in or conflict between the court's orders in this case. The minute order, which states "the Court so orders," plainly refers to the court's case management order. That order unambiguously states that the court referred the case to private mediation pursuant to the parties' agreement. Further, we defer to the court's own comments, on the record, confirming that the court did not order the parties to pursue mediation but rather referred the case to mediation in response to the parties' mutual agreement to pursue private mediation.

■ Finally, Castillo argues that the parties believed they had been ordered to mediation. Mainly, he asserts that the parties signed a stipulation to continue the post-mediation status conference which stated, "on September 30, 2013, the Parties attended a case management conference where *the Court ordered the Parties to attend mediation* and set a Post-Mediation Status Conference for January 6, 2014." Castillo contends that under Evidence Code section 622, the stipulation creates a conclusive presumption that the court ordered the parties to mediation. Evidence Code section 622 states: "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration." Castillo assumes, without analysis or citation to legal authority, that a stipulation to continue a status conference is a "written instrument" within the meaning of Evidence Code section 622. We found no case directly supporting Castillo's contention; however, our own research revealed that the term "written instrument" may have different meanings depending on the context in which it is used. (See *Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616, 621–626 [96 Cal.Rptr.2d 865] [reviewing cases applying varying interpretations of the term "written instrument"].) We conclude Castillo waived the issue by failing to provide authority or reasoned legal argument in support of his position. (*People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 502–503 [148 Cal.Rptr.3d 361] [articulating rule that if party fails to support its argument with necessary citations to the record, the argument will be deemed waived].)

### 2. *The Parties Did Not Stipulate to Mediate Their Dispute Under Rule 3.891(a)(2)*

Alternatively, Castillo argues that the parties stipulated to submit their case to mediation under rule 3.891(a)(2). Rule 3.891(a)(2) states that the parties' stipulation must be "filed" not later than 90 days before trial. Here, no stipulation appears in the appellate record, and Castillo appears to concede the parties never filed a stipulation to mediate their dispute. Neither the court's minute order of September 30, 2013, nor the parties' stipulation to

continue the post-mediation status conference can reasonably be construed as a stipulation by the parties to submit their case to mediation, as Castillo contends.

█ Castillo's argument is further undermined by the fact that the parties did not follow the rules applicable to actions submitted to mediation under rule 3.891: they did not ask the court to extend the five-year period to bring the case to trial (rule 3.896(b)); they did not complete their mediation within 60 days of the reference to mediation (rule 3.896(c)); and they did not request an extension of the time to complete the mediation (*ibid.*). Although Castillo dismisses these procedural deficiencies, we see them as further evidence that the court did not order and the parties did not stipulate to submit their case to mediation under rule 3.891.

### C. *The Automatic Tolling Provision of Section 1775.7 Does Not Apply When Parties Engage in Private Mediation*

Castillo contends that, even in the absence of compliance with rule 3.891(a), any agreement by the parties to pursue mediation triggers the automatic tolling provision of section 1775.7. That section tolls the five-year period to bring a case to trial if a case "is or remains submitted to mediation pursuant to this title." (§ 1775.7, subd. (b).) Castillo focuses only on the phrase "submitted to mediation," and argues in favor of an expansive interpretation of section 1775.7, such that *any* agreement by the parties to privately mediate a pending case effectively "submits" the case to mediation and triggers the tolling provision. Castillo cites no case law applying section 1775.7's automatic tolling provision to a case in which the parties engaged in private mediation. We found only one published case, *Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124 [19 Cal.Rptr.3d 381], discussing the interplay between section 583.310 and section 1775.7. However, *Gonzalez* did not explicitly consider the point advanced by Castillo here, namely whether section 1775.7 tolls the five-year period while the parties pursue private mediation. Rather, the court considered whether the five-year period was tolled beginning on the date the trial court referred the case to mediation or, as the statute expressly provides, on the date four years and six months after the date the plaintiff filed her complaint. (*Gonzales*, at pp. 1129–1130.)

█ In the absence of case authority to guide us, we examine the statute to determine whether it is susceptible to the interpretation Castillo urges. We conclude it is not. Our analysis of the statute is guided by well-settled principles. " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there

is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]" [Citations.] " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.]" ' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760]; see *Isidora M. v. Silvino M.* (2015) 239 Cal.App.4th 11, 18 [190 Cal.Rptr.3d 502].) We do not " 'examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. [Citation.]' " (*Bruns, supra*, 51 Cal.4th at p. 726.)

 Section 1775.7, subdivision (b), expressly applies only to cases "submitted to mediation *pursuant to this title*," i.e., pursuant to title 11.6 of the Code of Civil Procedure. (§ 1775.7, subd. (b), italics added.) Title 11.6, in turn, only governs mediation offered by courts as part of an alternative dispute resolution program: The Legislature declared that "[t]he purpose of this title [tit. 11.6] is to encourage the use of *court-annexed* alternative dispute resolution methods in general, and mediation in particular." (§ 1775, subd. (f), italics added.) Similarly, section 1775.3, which defines the scope of title 11.6, states that pending civil actions "may be submitted to mediation by the presiding judge or the judge designated under this title *as an alternative to judicial arbitration* pursuant to Chapter 2.5 (commencing with Section 1141.10) of Title 3." (§ 1775.3, subd. (a), italics added.) The fact that mediation is described as an alternative to judicial arbitration, which is itself overseen, managed and in many cases paid for by the courts, further reflects the Legislature's intent that title 11.6 applies only to court-annexed mediation programs.

We also consider section 1775.7 with reference to the other provisions of title 11.6 of the Code of Civil Procedure that regulate the mediation process. For example, the Legislature provided that the compensation for "court-appointed mediators" would be comparable to compensation for arbitrators under section 1141.18. (§ 1775.8, subd. (a).) Further, section 1775.8 provides that "[a]ll administrative costs of mediation, including compensation of mediators, shall be paid in the same manner as for arbitration pursuant to Section 1141.28. Funds allocated for the payment of arbitrators under the judicial arbitration program shall be equally available for the payment of mediators under this title." (§ 1775.8, subd. (b).) These provisions, which direct the use of court budgetary funds, only make sense in the context of a

court-annexed mediation program. Other provisions of title 11.6 regulating the mediation process also could only apply to the extent the court has responsibility for and control over the mediation. (See, e.g., §§ 1775.6 [mediator selection], 1775.8 [mediator compensation], 1775.9 [statement of nonagreement required].) The Judicial Council rules implementing section 1775 et seq. support our interpretation, as they, too, only make sense as applied to a judicially-managed alternative dispute resolution program. (See, e.g., rules 3.892 [requiring courts offering mediation program to maintain list of approved mediators], 3.893 [giving court authority to select mediator if the parties cannot reach agreement within 15 days], 3.894 [setting forth requirements regarding attendance at mediation and advance disclosure of participants], 3.895 [requiring mediator to file a statement of agreement or nonagreement within 10 days of the completion of the mediation].)

■ We conclude, based upon the statute's clear and unambiguous language, that section 1775.7, subdivision (b), automatically tolls the five-year statutory time to prosecute an action only if the parties participate in a mediation conducted through a court-annexed mediation program.[4] The legislative history of title 11.6 of the Code of Civil Procedure supports our interpretation. When the bill was first presented to the Senate, the Legislative Counsel described the key issue as follows: "Should a three year pilot program be established in Los Angeles County, and in any other county electing to participate, which allows a trial court judge to order a case with an amount in controversy of under $50,000 to non-binding mediation?" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 401 (1993–1994 Reg. Sess.) as amended May 19, 1993, p. 1; see also Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 401 (1993–1994 Reg. Sess.) June 1, 1993.) As the bill moved to the Assembly, its provisions developed somewhat and the main purpose of the bill was described more particularly: "Permits all courts in Los Angeles County, and in other courts electing to participate, to refer civil cases that would otherwise be subject to judicial arbitration to mediation instead." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 401 (1993–1994 Reg. Sess.) as amended June 1, 1993, p. 1.) Further, the bill provided that the Judicial Council would subsequently report to the Legislature concerning the court-ordered alternative dispute resolution generally, and the pilot mediation program in particular. (*Ibid.*) When passed, the bill's focus remained on the use of court-ordered mediation as an alternative to judicial arbitration. (Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 401 (1993–1994 Reg. Sess.) Sept. 8, 1993.)

---

[4] We do not address Castillo's remaining arguments, which presume the statute is ambiguous. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563] ["[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy"].)

■ In sum, we conclude that the automatic tolling provision found in section 1775.7, subdivision (b), has no application where, as here, the parties choose to mediate their dispute privately.[5]

3., 4.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of dismissal is affirmed. Defendants are entitled to recover costs incurred in this appeal.

Edmon, P. J., and Jones, J.,[†] concurred.

---

[5] Nothing in this opinion should be construed to impact the parties' ability to stipulate to a stay in the proceedings while they engage in mediation. (See § 583.330.)

[*] See footnote, *ante*, page 1186.

[†] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.